IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 ANNUITY TRUST FUND; CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 HEALTH & WELFARE TRUST FUND; CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 MARKET RECOVERY TRUST FUND; CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 RETIREE HEALTH REIMBURSEMENT TRUST FUND; and CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 VACATION & HOLIDAY TRUST FUND, by their Trustees MALCOLM KALEO NAKAMURA, TIM LYONS, KEITH EMERSON, TARYN MIYAMOTO, MARC MATSUBARA, DOUGLAS KEMA, JR., RYDEN VALMOJA, and PATERNO ASUNCION; and DISTRICT COUNCIL 50 JOINT APPRENTICESHIP & TRAINING TRUST FUND, by its Trustees LARI BLOOM, RYDEN VALMOJA, KARL SINCLAIR, BARBARA KONO, JOHN FRIGILLANA, JR., MALCOLM KALEO NAKAMURA, DOUGLAS KEMA, JR., JOHN MATHIAS, and DWAYNE ARELLANO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 23-00063 HG-WRP FINDINGS AND RECOMMENDATION TO GRANT IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT 808 MAINTENANCE & FLOORING INC. |
| Plaintiffs, | ) ) | |

vs.                                          )
                                             )
808 MAINTENANCE & FLOORING                   )
INC.; JOHN DOES 1-10; JANE                   )
DOES 1-10; DOE CORPORATIONS                  )
1-10; DOE PARTNERSHIPS 1-10;                 )
and DOE TRUSTS 1-10,                         )
                                             )
              Defendants.                    )
_____             )

FINDINGS AND RECOMMENDATION TO GRANT IN PART PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT
808 MAINTENANCE & FLOORING INC.

Before the Court is Plaintiffs' Motion for Default Judgment Against

Defendant 808 Maintenance & Flooring Inc. (Motion). See Pls.' Mot., ECF

No. 11. On June 29, 2023, the Court ordered Plaintiffs to file a Supplemental

Declaration in support of their Motion, see Minute Order, ECF No. 13, which

Plaintiffs filed on August 4, 2023. See Supplemental Declaration (Supp. Decl.),

ECF No. 16. Defendant 808 Maintenance & Flooring Inc. has not appeared in this

action or filed a response to the Motion. The Court found this Motion suitable for

disposition without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice

of the United States District Court for the District of Hawaii. See Minute Order,

ECF No. 12. After careful consideration of Plaintiffs' submissions and the

relevant legal authority, the Court FINDS and RECOMMENDS that Plaintiffs'

Motion be GRANTED IN PART.[1]

## FACTUAL BACKGROUND

Plaintiffs[2] bring this action for contract and statutory damages under

the Employee Retirement Income Security Act of 1974, as amended (ERISA), and

against Defendant 808 Maintenance & Flooring, Inc. (Defendant) for Defendant's

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court.  A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

[2] The Plaintiffs are the Carpet, Linoleum & Soft Tile Local Union 1926 Annuity Trust Fund (Annuity Fund); Carpet, Linoleum & Soft Tile Local Union 1926 Health & Welfare Trust Fund (Health & Welfare Fund); Carpet, Linoleum & Soft Tile Local Union 1926 Market Recovery Trust Fund (Market Recovery Fund); Carpet, Linoleum & Soft Tile Local Union 1926 Retiree Health Reimbursement Trust Fund (Health Reimbursement Fund); Carpet, Linoleum & Soft Tile Local Union 1926 Vacation & Holiday Trust Fund (Vacation & Holiday Fund), and District Council 50 Joint Apprenticeship & Training Trust Fund (Training Fund) (collectively referred to as the "Trust Funds").  See Compl., ECF No. 1 ¶ 1.

Plaintiffs Malcolm Kaleo Nakamura, Tim Lyons, Keith Emerson, Taryn Miyamoto, Marc Matsubara, Douglas Kema, Jr., Ryden Valmoja, and Paterno Asuncion are Trustees of the Annuity Fund, Health & Welfare Fund, Market Recovery Fund, Health Reimbursement Fund, and Vacation & Holiday Fund (collectively, the "Carpet Linoleum Trustees").  See id. ¶ 2.

Plaintiffs Lari Bloom, Ryden Valmoja, Karl Sinclair, Barbara Kono, John Frigillana, Jr., Malcom Kaleo Nakamura, Douglas Kema, Jr., John Mathias, and Dwayne Arellano are Trustees of the Training Fund (collectively, the "District Council 50 Trustees"). The Carpet Linoleum Trustees and the District Council 50 Trustees are referred to herein as the "Trustees." See id. ¶ 3.  The Trust Funds and the Trustees are collectively referred to as "Plaintiffs."

failure to make certain payment contributions to the Trust Funds for the benefit of Defendant's employees who are represented by the Trustees in this action.

The Trustees are fiduciaries with respect to their respective Trust Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are duly authorized to institute legal proceedings to enforce the terms of the applicable collective bargaining agreements.  See Compl., ECF No. 1 ¶ 4.

The Trust Funds manage and administer employee benefits for Defendant's employees.  See id. ¶ 11.  These employee benefits are derived from monetary contributions paid by Defendant and which are required under that certain Master Agreement Covering Flooring Trades in the State of Hawaii between Carpet, Linoleum & Soft Tile Local Union 1926 and International Union of Painters, as amended (CBA).  See id. ¶ 12.

On October 2, 2019, Defendant became a contributing employer under the CBA when it signed a Certification of Receipt and Acceptance of the CBA and agreed to be bound by all the terms of the CBA, the amendments thereto, and the Declaration of Trust Agreement for each respective Trust Fund (collectively, the Declaration of Trust Agreement for each Trust Fund are referred to as the "Trust Agreements").  See id. ¶¶ 12, 13; id. at Ex. B.

Under the CBA and Trust Agreements, Defendant was required to

4

make payment contributions to the Trust Funds based upon employee hours as stated in the CBA and Trust Agreements.  See Compl., ECF No. 1 ¶ 14.  However, according the Complaint, Defendant failed to make the required contributions to the Trust Funds or otherwise comply with the CBA and the Trust Agreements.  See id. ¶¶ 16, 26.  Therefore, Plaintiffs allege that Defendant owes to Plaintiffs delinquent and unpaid contributions under the CBA and Trust Agreements.  See id. ¶ 18.

Defendant also agreed to pay liquidated damages for each delinquent monthly contribution, see id. ¶ 14(e), and to pay Plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to recover delinquent contributions.  See id. ¶ 14(g).

After Defendant failed to make the required contributions under the CBA and Trust Agreements, Plaintiffs filed the present action against Defendant for breach of contract and statutory damages under ERISA.  Defendant was served with the Complaint and Summons on February 10, 2023.  See Proof of Service, ECF No. 6.  To date, Defendant has failed to answer or otherwise respond to the Complaint.

On March 8, 2023, Plaintiffs filed their Request for Entry of Default Against Defendant.  See Pls.' Request for Entry of Default against Defendant, ECF No. 7.  On that same day, Plaintiffs mailed a copy of their Request for Entry of

Default to Defendant.  See Pls.' Mot., ECF No. 11-1 at 2-3.  The Clerk entered

default against Defendant on March 10, 2023.  See Clerk's Entry of Default, ECF

No. 8.  This Motion for entry of default judgment against Defendant followed.

Plaintiffs' Motion requests a default judgment against Defendant

awarding Plaintiffs contractual and statutory damages for unpaid contributions,

liquidated damages, attorneys' fees and costs, and post-judgment interest.  For the

reasons stated below, the Court recommends Plaintiffs' Motion be granted in part.

## DISCUSSION

Federal Rules of Civil Procedure (FRCP) Rule 55(b)(2) provides that

"[i]n all other cases [other than those in which the clerk of the court may enter

default judgment], the party must apply to the court for a default judgment."  Fed.

R. Civ. P. 55(b)(2).  The granting or denial of a motion for default judgment is

within the discretion of the court.  See Haw. Carpenters' Trust Funds v. Stone, 794

F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are ordinarily disfavored, and

cases should be decided on their merits if reasonably possible.  See Eitel v.

McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should consider the

following factors in deciding whether to grant a motion for default judgment:

(1) the possibility of prejudice to the plaintiff;
(2) the merits of plaintiff's substantive claim;
(3) the sufficiency of the complaint;
(4) the sum of money at stake in the action;
(5) the possibility of a dispute concerning material facts;
(6) whether the default was due to excusable neglect; and

(7)  the strong policy underlying the Federal Rules of Civil
     Procedure favoring decisions on the merits.

Id. at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citation omitted).

**A. Jurisdiction**

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether or not it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").  "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rules of Civil Procedure Rule 4." Travelers Cas. &

<u>Sur. Co. of Am. v. Brenneke</u>, 551 F.3d 1132, 1135 (9th Cir. 2009) (citation omitted).

This Court has subject matter jurisdiction over Plaintiffs claim for statutory damages under ERISA.  <u>See</u> Compl., ECF No. 1 ¶¶ 8, 9; <u>see also</u> 29 U.S.C. § 1132(e)(1) (stating "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary").  The Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. Section 1367(a).

For the Court to have personal jurisdiction over Defendant, Plaintiffs must have properly served Defendant in accordance with the FRCP.  To serve a corporation in compliance with the FRCP, a plaintiff may deliver a copy of the summons and complaint to an agent authorized "by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."  <u>See</u> Fed. R. Civ. P. 4(h)(1).  Hawaii law does not require the summons and complaint to be mailed to the defendant when a corporation's authorized agent is served with each.  <u>See</u> Haw. Rev. Stat. § 414-64.

Here, the Court has personal jurisdiction over Defendant because Plaintiffs served the Summons and Complaint on Defendant's registered agent who

is authorized to receive service of process.  See Proof of Service, ECF No. 6; Pls.'

Mot. ECF No. 11-1 at 9.

### B. Eitel Factors

Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate under the Eitel factors outlined

above.

### 1. The Possibility of Prejudice to Plaintiffs

The first factor considers whether Plaintiffs would suffer prejudice if

default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp.

2d 1172, 1177 (C.D. Cal. 2002).  Here, absent entry of default judgment, Plaintiffs

would be without another recourse for recovery against Defendant.  Accordingly,

the first Eitel factor favors default judgment.

### 2. Merits of Plaintiffs' Substantive Claims

As noted above, for purposes of liability the factual allegations in the

complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-

18; Fair Hous. of Marin, 285 F.3d at 906.  As discussed below, the allegations in

Plaintiffs' Complaint, taken as true, establish that Plaintiffs are entitled to default

judgment against Defendant on both of their claims.

### a. Breach of Contract (Count I)

Plaintiffs have made a prima facia showing of breach of contract

against Defendant under the CBA and Trust Agreements.  To prevail on a claim for breach of contract, a party must prove: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract."  Evergreen Eng'g, Inc. v. Green Energy Team LLC, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012) (citation omitted).

Plaintiffs have established all of the required elements for a breach of contract claim.  The Complaint states that the CBA and Trust Agreements are valid contracts between Defendant and Defendant's employees.  See Compl., ECF No. 1 ¶¶ 13, 21; Pls.' Mot., ECF No. 11-9, Ex. E at 4.  The Trustees are fiduciaries and are duly authorized to institute legal proceedings on behalf of the employees to collect delinquent employer contributions, liquidated damages, attorneys' fees and/or to otherwise enforce the terms of the applicable collective bargaining agreements.  See Compl., ECF No. 1 ¶ 4.

Pursuant to the CBA and Trust Agreements, Defendant promised to pay to the Trust Funds certain amounts for employee benefits in exchange for work and labor performed by Defendant's employees.  See id. ¶ 22.  Defendant's employees performed their work obligations, see id. ¶ 16, but Defendant failed to make the required contributions to the Trust Funds.  See id. ¶ 26.  Therefore, Defendant breached the CBA and Trust Agreements by failing to make the

required contributions to the Trust Funds.  Consequently, the Court finds that

Plaintiffs' allegations, taken as true, are sufficient to establish that Plaintiffs are

entitled to default judgment against Defendant for breach of contract.

### b.  Statutory Violations (Count II)

Plaintiffs have also established entitlement to statutory damages.

Section 515 of ERISA, 29 U.S.C. Section 1145, provides for Defendant's

obligation to make contributions under the CBA:

> Every employer who is obligated to make contributions to
> a multiemployer plan under the terms of the plan or under
> the terms of a collectively bargained agreement shall, to
> the extent not inconsistent with law, make such
> contributions in accordance with the terms and conditions
> of such plan or such agreement.

See Compl., ECF No. 1 ¶ 29.

Section 502(g) of ERISA, 11 U.S.C. § 1132(g), sets forth the damages

associated with unpaid contributions:

> (2) In any action under this subchapter by a fiduciary for
> or on behalf of a plan to enforce section 1145 of this title
> in which a judgment in favor of the plan is awarded, the
> court shall award the plan--
>    (A) the unpaid contributions,
>    (B) interest on the unpaid contributions,
>    (C) an amount equal to the greater of--
>        (i) interest on the unpaid contributions, or
>        (ii) liquidated damages provided for under
>        the plan in an amount not in excess of 20
>        percent (or such higher percentage as may be
>        permitted under Federal or State law) of the
>        amount determined by the court under

> subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

See id. ¶ 30.

Here, Defendant violated its statutorily mandated obligation to pay contributions to the Trust Funds on a timely basis and, therefore, damages are owed to Plaintiffs. See id. ¶ 31. The Court finds that Plaintiffs' allegations, taken as true, are sufficient to establish that Plaintiffs are entitled to default judgment against Defendant for statutory damages. Accordingly, this factor weighs in favor of default judgment.

### 3. Sufficiency of the Complaint

The allegations in the Complaint are sufficiently pled and supported by the Motion. The Court finds that the sufficiency of the Complaint weighs in favor of default judgment.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176 (citing Eitel, 782 F.2d at 1471). Entry of a default judgment for money is

12

appropriate without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation." Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981).

Here, Plaintiffs seek damages in the amount of $14,997.16 in unpaid employer contributions, $59,443.99 in liquidated damages, $494.00 in costs, and $6,994.00 in attorneys' fees. See Pls.' Mot., ECF No. 11 at 3; Supp. Decl., ECF No. 16 ¶ 7; Declaration of Dennis Kawasaki, dated August 4, 2023 (8/4/2023 Kawasaki Decl.), ECF No. 16-9 ¶ 5. Plaintiffs' requested damages are tailored to each category of damages owed to Plaintiffs under the CBA and Trust Agreements and are capable of mathematical calculation as discussed more fully below. Therefore, the Court concludes this factor weighs in favor of default judgment.

### 5. Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. See TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendant has been given a fair opportunity to defend this action and has not done so. Because no dispute has been raised regarding Plaintiffs' material factual allegations, this factor favors default judgment.

### 6. Whether Default was Due to Excusable Neglect

"The sixth Eitel factor considers whether defendant's default may

13

have been the product of excusable neglect." <u>Ho v. Tan Trinh</u>, 2016 WL 11520810, at *5 (C.D. Cal. Oct. 27, 2016). This factor favors a default judgment when the defendant has been properly served. <u>See</u> <u>id.</u>

As stated above, Defendant was properly served in accordance with FRCP Rule 4 and has failed to participate in this action. Therefore, this factor weighs in favor of default judgment.

### 7. Policy Favoring Decisions on the Merits

Defendant's default renders a decision on the merits impractical, if not impossible. Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." <u>PepsiCo., Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh <u>Eitel</u> factor is not alone dispositive"). Here, Defendant has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Defendant.

### 8. Totality of <u>Eitel</u> Factors

The Court FINDS and RECOMMENDS that the totality of the factors weigh in favor of entering default judgment in favor of Plaintiffs' and against Defendant.

## C. Remedies

Although Defendant's default establishes liability, it does not

establish all relief to which Plaintiffs are entitled.  See Fair Hous. of Marin, 285

F.3d at 906.  Plaintiffs must provide evidence to support their requested relief and

that relief "must not differ in kind from, or exceed in amount, what is demanded in

the pleadings."  Fed. R. Civ. P. 54(c).

Plaintiffs request a final judgment against Defendant in the amount of

$14,997.16 for unpaid contributions,[3] $59,443.99 in liquidated damages on unpaid

and delinquent contributions,[4] $6,994.00 in reasonable attorneys' fees,[5] and

$494.00 in costs, for a total judgment amount of $87,706.49[6] plus post-judgment

---

[3] In their Supplemental Declaration, Plaintiffs lowered their request for unpaid contributions from $41,754.71 to $14,997.16 because, although Defendant has not defended in this action, it has apparently made sporadic payments toward its overdue delinquent contribution obligations to Plaintiffs since the Complaint was filed.  See Supp. Decl., ECF No. 16 ¶ 8.

[4] Plaintiffs also reduced their request for liquidated damages from $73,548.24 to $59,443.99 based on Defendant's recent payments to Plaintiffs.  See id.

[5] Plaintiffs increased their request for attorneys' fees from $6,270.00 to $6,994.00.  See id. ¶ 7.

[6] Plaintiffs' Motion originally requested a total of $122,066.95.  See Pls.' Mot., ECF No. 11 at 3.  Additionally, Plaintiffs' Motion originally requested $5,777.34 in interest on Defendant's unpaid contributions.  See Pls.' Mot., ECF No. 11-1 at 18.  The Court ordered Plaintiffs to submit additional information to support their calculation of interest.  See Minute Order, ECF No. 13.  However, in their Supplemental Declaration, Plaintiffs clarified that they did not charge Defendant interest on the unpaid contributions.  See Supp. Decl., ECF No. 16 ¶ 8; 8/4/2023 Kawasaki Decl., ECF No. 16-9 ¶ 4.  Therefore, it appears that Plaintiffs withdraw their request for an award of interest.

interest.  See Pls.' Mot., ECF No. 11 at 3; Supp. Decl., ECF No. 16 ¶ 7; 8/4/2023

Kawasaki Decl., ECF No. 16-9 ¶ 5.  Each category of requested relief is addressed

below.

### 1.  Unpaid Contributions

First, Plaintiffs contend that Defendant owes unpaid contributions in

the amount of $14,997.16.  See Supp. Decl., ECF No. 16 ¶ 8, 11; 8/4/2023

Kawasaki Decl., ECF No. 16-9 ¶ 5.  Plaintiffs submitted the Declaration of Dennis

Kawasaki, a Plan Administrator for the Plaintiffs, in support of their request.  The

Declaration attaches a summary ledger for the amounts Defendant owes in unpaid

contributions.  See Exhibit 4 to 8/4/2023 Kawasaki Decl., ECF No. 16-10.

Although Plaintiffs do not provide a breakdown or calculation, or otherwise

indicate which months the $14,997.16 outstanding balance applies to, the Court

was able to determine that the overdue balances for unpaid contributions from

April 2023 ($7,678.17) and June 2023 ($7,590.60) minus the amounts that were

overpaid in September 2022 ($1.87) and February 2023 ($269.74) equals

$14,997.16.  See id.  Accordingly, the Court FINDS and RECOMMENDS that

Plaintiffs have established damages in the amount of $14,997.16 for unpaid

contributions.

### 2. Liquidated Damages

#### a. Liquidated Damages on Unpaid Contributions

Next, Plaintiffs seek liquidated damages in the amount of $59,443.99, which Plaintiffs support with Mr. Kawasaki's Declaration and itemized in Exhibit 4.  <u>See</u> 8/4/2023 Kawasaki Decl., ECF No. 16-9 ¶ 5; 8/4/2023 Kawasaki Decl., Ex. 4, ECF No. 16-10 at 3.  According to the CBA, when an employer's contributions are not paid by the 25th day of the month immediately following the month in which the contributions accrue, such contributions are delinquent.  <u>See</u> CBA, ECF No. 11-9 at 26.  The CBA also states that Liquidated damages are equal to 20% of the delinquent contributions.  <u>See</u> CBA, ECF No. 11-9 at 26; Supp. Decl., ECF No. 16 ¶ 9.

Subsection 1132(g)(2)(C)(ii) of ERISA requires liquidated damages on unpaid contributions "in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)."  29 U.S.C. § 1132(g)(2)(ii); <u>see also</u> <u>Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.</u>, 875 F.2d 212, 215 (9th Cir. 1989) (explaining that liquidated damages under 29 U.S.C. § 1132(g)(2)(C)(ii) are mandatory if there are unpaid contributions at the time of filing the action).  However, a liquidated damages provision must not be an unlawful penalty.  <u>See</u> <u>Hawaii Laborers' Tr. Fund v.</u>

17

Structural Dynamics, Inc., 2006 WL 1992605, at *2 (D. Haw. July 14, 2006).  A

liquidated damages provision must meet two conditions for enforceability: "(1) the

harm caused by a breach must be very difficult or impossible to estimate; (2) the

amount fixed must be a reasonable forecast of just compensation for the harm

caused."  See id. (citing Idaho Plumbers, 875 F.2d at 217).  In examining whether

the amount fixed is a reasonable forecast of just compensation for the harm caused,

the Court must consider the parties' intentions and whether the liquidated damages

provision is a good faith attempt to set an amount equivalent to the damages they

anticipate.  See Idaho Plumbers, 875 F.2d at 217.

   Here, Plaintiffs' Complaint states that it is impracticable and

extremely difficult to fix the amount of damages to the Trust Funds that result from

the nonpayment of contributions.  See Compl., ECF No. 1 ¶ 24.  Plaintiffs state

that liquidated damages in the amount of 20% of the delinquent contributions

"represent a reasonable endeavor to ascertain and compensate for the damages

caused [to] the Trust Funds by the non-payment of said contributions."  See

Compl., ECF No. 1 ¶ 24.  Article 20, Section 4(b) of the CBA further supports that

the 20% liquidated damages clause represents a "good faith attempt, at least in the

context of this default proceeding."  Hawaii Laborers' Tr. Fund, 2006 WL

1992605, at *2.  Article 20, Section 4(b) of the CBA states:

> [T]he failure of the Employer to make the required timely
> payment of contributions imposes additional burden and

18

> expenses upon the Trustees in the collection thereof and in the administration of the Trust Funds, including but not limited to the processing of late contribution reports, correspondence and other communication with said Employer, and in addition thereto, may cause a loss of benefits to Employees, and loss of benefit of the use of the amounts required to be paid, all of which are difficult to accurately ascertain.

See Pls.' Mot., ECF No. 11-9, Ex. E at 27.  The Court therefore FINDS that the CBA demonstrates the parties' agreement that the 20% liquidated damages provision represents their good faith attempt provide a reasonable forecast of just compensation for the harm caused by Defendant's delinquent contributions.

The Court will now determine the amount of liquidated damages awardable to Plaintiffs for Defendant's delinquent contributions.  In their Supplemental Declaration, Plaintiffs request $59,443.99 in liquidated damages on delinquent contributions for the months of April 2022 through June 2023.  See 8/4/2023 Kawasaki Decl., ECF No. 16-9 ¶ 5.  Plaintiffs' itemized spreadsheet shows that Defendant is no longer overdue on its contribution obligations for these months except for April and June 2023 where the spreadsheet shows that Defendant still has an overdue balance.  See 8/4/2023 Kawasaki Decl., Ex. 4, ECF No. 16-10 at 3.  Further, the itemized spreadsheet does not indicate when Defendant's contribution payments were made and, therefore, the Court is not able to confirm that Defendant's payments were late for these months and that liquidated damages were due with respect to these contributions.

19

However, "[i]n awarding default judgment, the court may rely on affidavits or declarations to fix the amount of damages." Xerox Corp. v. KJ Glob. Enter., Inc., 2014 WL 12694258, at *3 (C.D. Cal. Oct. 6, 2014) (citation omitted). Further, "[t]he prevailing party on a breach of contract claim is entitled to recover as nearly as possible the equivalent of the benefits of performance." Id. (citation omitted). In their Supplemental Declaration, Plaintiffs represent that Defendant only recently made "sporadic" payments on its delinquent contributions obligations and was credited for such payments and, thus, liquidated damages are stilled owed for the months of April 2022 through June 2023 as shown in the spreadsheet in the amount of $59,443.99. See Supp. Decl., ECF No. 16 ¶ 8. Mr. Kawasaki's Declaration also states that the amount requested in liquidated damages takes into consideration all payments made by Defendant to date and that Plaintiffs' Group Plan Administrator, Inc. has calculated the amount of liquidated damages that Defendant owes to Plaintiffs in accordance with the terms of the applicable trust agreement documents. See 8/4/2023 Kawasaki Decl., ECF No. 16-9 ¶ 4. The Court also confirmed that Plaintiffs' liquidated damages amount for each month was 20% of the contribution for that month when rounded to a whole percentage. However, when calculating liquidated damages at exactly 20% of the delinquent contributions, the Court's total came to $59,433.09 (compared to $59,443.99

requested in Mr. Kawasaki's Declaration).[7]   Accordingly, the Court

RECOMMENDS that Plaintiffs be awarded $59,433.09 in liquidated damages for

Defendant's delinquent contributions.

### 3. Attorneys' Fees

Plaintiffs request $6,270.00 in attorneys' fees.  An award of

reasonable attorneys' fees is mandatory in all successful actions to recover

delinquent contributions under 29 U.S.C. Section 1132 (g).  Additionally, under

the CBA and Trust Agreements, Defendant agreed to pay reasonable attorneys'

fees and costs necessarily incurred to recover delinquent or unpaid contributions up

to 25% of the total amount of contributions and damages due to Plaintiffs.  See

Compl., ECF No. 1 ¶¶ 14(g), 19.

Reasonable attorneys' fees are generally based on the traditional

"lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).  A reasonable

fee is determined by multiplying (1) "the number of hours reasonably expended on

---

[7] For example, the delinquent contribution amount for June 2023 was
$7,590.60.  See 8/4/2023 Kawasaki Decl., Ex. 4, ECF No. 16-10 at 3.  When
liquidated damages are calculated at 20%, the liquidated damages for June 2023
total $1,518.12.  However, Plaintiffs calculated the June 2023 liquidated damages
at 20.059679% of the delinquent contributions, resulting in liquidated damages
amounting to a slightly higher value of $1,522.65.  See id.  Having found above
that the parties agreed to liquidated damages at 20% of delinquent contributions,
the Court uses 20% as the multiplier to determine the amount of liquidated
damages owed to Plaintiffs.

the litigation" by (2) "a reasonable hourly rate."  Hensley, 461 U.S. at 433-434.

### a.  Reasonable Hourly Rate

The reasonable hourly rate is determined by assessing the prevailing market rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation.  See Roberts v. City of Honolulu, 938 F.3d 1020, 1025 (9th Cir. 2019).  The relevant community is the forum in which the district court sits.  See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).  "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Id. at 980 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  The Court may also rely on its own knowledge of experience in determining a reasonable hourly rate.  See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (holding district court did not abuse its discretion by relying on its own knowledge and experience to determine the reasonable hourly rate for attorney fees).

Here, Plaintiffs' counsel seeks an hourly rate of $280 for Mr. George Hetherington, $260 for Mr. Jesse Smith, and $260 for Ms. Jaime H. Tokioka.  In support of these hourly rates, Plaintiffs submitted the Declaration of J. George Hetherington in Support of Awards of Attorneys' Fees and Costs and the

Supplemental Declaration.  See Pls.' Mot., ECF No. 11-4; Supp. Decl., ECF No. 16.

 For Mr. Hetherington's hourly rate, Plaintiffs provided Mr. Hetherington's biographical statement detailing his 45 years of experience.  See Pls.' Mot., ECF No. 11-11, Ex. G.  Based on the evidence provided in support of Mr. Hetherington's hourly rate and the Court's knowledge and experience of the prevailing rates in the community, the Court FINDS that Mr. Hetherington's rate of $280 per hour is reasonable.

 For Mr. Smith's hourly rate, Plaintiffs provided Mr. Hetherington's Declaration and Mr. Smith's biographical information, which detail Mr. Smith's thirteen (13) years of commercial litigation experience and the various awards he has received for his achievements.  See Supp. Decl., Ex.1, ECF No. 16-1 at 2. Based on the evidence provided in support of Mr. Smith's hourly rate and the Court's knowledge and experience of the prevailing rates in the community, the Court FINDS that Mr. Smith's rate of $260 per hour is reasonable.

 For Ms. Tokioka's hourly rate, Plaintiffs provided Mr. Hetherington's Declaration and Ms. Tokioka's biographical information, which detail Ms. Tokioka's two (2) years of commercial litigation experience.  See id. at 4. Plaintiffs do not explain why Mr. Smith's and Ms. Tokioka's hourly rate is the same despite Mr. Smith having practiced for eleven (11) years longer than Ms.

23

Tokioka.  Plaintiffs state that in other cases (not the present case), Mr. Smith's customary rate is $550 and Ms. Tokioka's customary rate is $350.  No explanation is provided as to why Mr. Smith's and Ms. Tokioka's customary rates take into consideration their differing levels of experience in other cases, but their requested hourly rates for this matter do not.  Accordingly, based on the evidence provided in support of Mr. Smith's hourly rate and the Court's knowledge and experience of the prevailing rates in the community, the Court finds that $180 per hour is a reasonable rate for Ms. Tokioka.  See Frost-Tsuji Architects v. Highway Inn, Inc., 2016 WL 11408177, at *11 (D. Haw. Feb. 1, 2016), report and recommendation adopted, 2016 WL 1257850 (D. Haw. Mar. 30, 2016), aff'd, 700 F. App'x 674 (9th Cir. 2017) (awarding $150 per hour for an attorney with two years of experience in 2017).

### b.  Hours Reasonably Expended

Plaintiffs bear the burden of proving their fees and costs were associated with the relief requested and reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993).  Time expended on work deemed excessive, redundant, or otherwise unnecessary will not be compensated.  See Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992) (quoting Hensley, 461 U.S. at 433-434).  The Court will

further reduce incomplete or block billed entries that do not comply with the Local

Rule 54.2:

> (3) Description of Services Rendered. The party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated. In describing such services, counsel should be sensitive to information protected by the attorney-client privilege or the attorney work product doctrine, but must nevertheless furnish an adequate non-privileged description of the services in question. **If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly**. For example, **time entries for telephone conferences must include an identification of all participants and the reason for the call**; entries for legal research must include an identification of the specific issue researched and, if possible, should identify the pleading or document for which the research was necessary; entries describing the preparation of pleadings and other documents must include an identification of the pleading or other document prepared and the activities associated with such preparation. **Block billing is not permitted, and block billed entries may be partially or completely excluded by the court**.

Local Rule 54.2(f)(3) (emphasis added).

Certain of Defendant's counsel's entries fail to comply with the

requirements listed above and, therefore, the Court strikes these entries.[8]  These

---

[8]

| Date | Hours Requested | | Hour Reduced |
|---|---|---|---|
| | *JGH* | *JJS* | |
| 01/09/2023 | 0.50 | | Stricken for block billing |
| 01/11/2023 | 0.50 | | Stricken for block billing |

entries do not comply with the Local Rules because they are either block billed or contain insufficient descriptions, and/or Plaintiffs have not demonstrated these fees were associated with the relief requested and reasonably necessary to achieve the results obtained.  See Tirona, 821 F. Supp. at 636; Au v. Funding Grp., Inc., 2013 WL 1154211, at *9 (D. Haw. Feb. 19, 2013), report and recommendation adopted, 2013 WL 1154351 (D. Haw. Mar. 19, 2013), aff'd, 588 F. App'x 707 (9th Cir. 2014); BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 2015 WL 881577, at *15 (D. Haw. Feb. 27, 2015).  The Court therefore reduces Mr. Hetherington's hours by 5 hours and Mr. Smith's hours by 1.5 hours.  The Court did not reduce any of Ms. Tokioka's hours.

In sum, the Court FINDS that Plaintiffs have established that 9.3 hours were reasonably expended by Mr. Hetherington, 8.75 hours were reasonably expended by Mr. Smith, and 1.25 hours were reasonably expended by Ms. Tokioka.  When multiplied by counsels' reasonable hourly rates, this results in a

| 01/20/2023 | 1.00 |      | Stricken for block billing |
|------------|------|------|-----------------------------|
| 01/23/2023 | 1.50 |      | Stricken for block billing |
| 11/03/2022 |      | 0.50 | Stricken for incompleteness; unclear how necessary to achieve result; block billed |
| 11/15/2022 | 0.50 |      | Stricken for incompleteness |
| 07/05/2022 | 1.00 |      | Stricken for block billing |
| 07/21/2022 |      | 1.00 | Stricken for block billing |

lodestar calculation of $2,604.00 for Mr. Hetherington's efforts, $2,275.00 for Mr.

Smith's efforts, and $225.00 for Ms. Tokioka's efforts, for a total of $5,104.00.

Together with GET tax, the Court RECOMMENDS that Plaintiffs be awarded

$5,344.50 as set forth in the below table.[9]

| Timekeeper | Rate | | Hours | Total | |
|---|---|---|---|---|---|
| George Hetherington | $ | 280.00 | 9.30 | $ | 2,604.00 |
| Jesse Smith | $ | 260.00 | 8.75 | $ | 2,275.00 |
| Jaime Tokioka | $ | 180.00 | 1.25 | $ | 225.00 |
| Total Fees before GET | | | | $ | 5,104.00 |
| GET (4.712%) | | | | $ | 240.50 |
| **Total Fees Recommended** | | | | **$** | **5,344.50** |

### 4. Costs

Plaintiffs request $494.00 in costs.  Costs are also awardable in

successful actions to recover delinquent contributions under 29 U.S.C. Section

1132(g).  While Plaintiffs did not attach invoices to Mr. Hetherington's

Declaration in support of their request for costs, the Court was able to confirm on

the docket the $402.00 cost of filing the Complaint, see ECF No. 1, and the $92.00

cost of serving the Complaint.  See Proof of Service, ECF No. 6 at 4.  The Court

FINDS that Plaintiffs' request for costs in the amount of $494.00 is reasonable and

RECOMMENDS that Plaintiffs be awarded $494.00 for their costs.

---

[9] $5,344.50 is less than 25% of the total amount of contributions and damages due to Plaintiffs.  See Compl., ECF No. 1 ¶¶ 14(g), 19.

### 5. Post-Judgment Interest

Plaintiffs request an award of post-judgment interest at 18% from the date on which default judgment is entered against Defendant.  See Pls.' Mot., ECF No. 11-1 at 23.

Federal law sets post-judgment interest as "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield." 28 U.S.C. § 1961(a).[10]  "Nevertheless, an 'exception to § 1961 exists when the parties contractually agree to waive its application.'" Jou v. Adalian, No., 2015 WL 7451160, at *3 (D. Haw. Nov. 23, 2015) (citing Fid. Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1023 (9th Cir. 2004) and Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 456-57 (5th Cir. 2013) ("[I]t is well settled that parties may contract for a different [post-judgment interest] rate.")).  "To be effective, an agreement to waive application of § 1961 and apply a different interest rate to judgments requires explicit language that is clear, unambiguous, and unequivocal." Jou, 2015 WL 7451160, at *3.

Here, Plaintiffs have not demonstrated that the parties to the CBA clearly, unambiguous, and unequivocally intended to waive Section 1961.  See Pls.' Mot., ECF No. 11-1 at 24.  Accordingly, the Court RECOMMENDS that the

---

[10] Currently, the interest rate equal to the weekly average 1-year constant maturity Treasury yield is 5.46%.

federal post-judgment interest rate set forth in 28 U.S.C. § 1961 should apply to the default judgment against Defendant.

CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiffs' Motion for Default Judgment Against Defendant 808 Maintenance & Flooring Inc. be GRANTED IN PART.  It is recommended that Plaintiffs be awarded $14,997.16 for unpaid contributions, $59,433.09 in liquidated damages on the unpaid and/or delinquent contributions, $5,344.50 in reasonable attorneys' fees, and $494.00 in costs.

The Court therefore recommends that Plaintiffs be awarded a total of $80,268.75 in damages against Defendant and post-judgment interest in accordance with 28 U.S.C. § 1961(a) to be calculated at the time of entry of default judgment against Defendant.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, September 27, 2023.



Wes Reber Porter
United States Magistrate Judge

CARPET, LINOLEUM & SOFT TILE LOCAL UNION 1926 ANNUITY TRUST FUND, et al. v. 808 MAINTENANCE & FLOORING INC.; CIVIL NO. 23-0063 HG-WRP; FINDINGS AND RECOMMENDATION TO GRANT IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST 808 MAINTENANCE & FLOORING INC.